**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael Sherwood NEWMAN and Andrew
Forga Coldwell, Defendants-
Appellants.**

**Nos. 73–1540, 73–1541.**

United States Court of Appeals,
Tenth Circuit.

Feb. 6, 1974.

John B. Jarboe, of Jarboe & Keefer, Tulsa, Okl., for appellant Newman.

Leslie L. Conner and James M. Little, Oklahoma City, Okl. (Leslie L. Conner, Jr., Oklahoma City, Okl., and Irvine E. Ungerman, Tulsa, Okl., with them on the brief), for appellant Coldwell.

Ben F. Baker, Asst. U. S. Atty. (Nathan G. Graham, U. S. Atty., N. D. Okl., with him on the brief), for appellee.

Before LEWIS, Chief Judge, and HOLLOWAY and McWILLIAMS, Circuit Judges.

LEWIS, Chief Judge.

Appellants Newman and Coldwell have directly appealed from their convictions for possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). Jury trial was waived and the trial was before the United States District Court for the Northern District of Oklahoma.

Uncontroverted evidence introduced at trial revealed that at approximately one o'clock on the morning of September 1, 1972, Border Patrol Agent George Jackson was on duty observing traffic at a turnpike gate on the east end of the Will Rogers Turnpike near Miami, Oklahoma. He first observed appellants Newman and Coldwell as they approached the gate in a pickup truck bearing Texas license plates. The vehicle, which carried an attached camper shell, was driven by Coldwell. Newman and a large German Shepherd dog were seated beside him in the front of the truck. As Coldwell stopped the truck to pay his toll, Agent Jackson looked through a small window in the camper and espied a large container covered with clothes.

■ Jackson asked that the vehicle be pulled over to the side of the road and subsequently joined the appellants at a spot 40 or 50 yards from the turnpike gate. He asked Newman and Coldwell where they were from and they informed him that they were from Texas. They were questioned as to the ownership of the truck and Newman responded that it belonged to his brother. Coldwell was asked what was within the container in the back and he answered that it held mirrors. Jackson indicated that he wanted to look into the container because it was large enough to contain an alien. Coldwell advised him that a crowbar would be needed to open it and went to the front of the truck to get a lug wrench. He then returned to the rear of the camper shell and opened it. Agent Jackson entered the camper and

observed a large deepfreeze, a large wooden box, and an antique trunk. Jackson also testified that he smelled the odor of marijuana when the rear of the camper was opened.[1]

Coldwell was unable to open the wooden container with the lug wrench. When Jackson informed him that he wanted to look inside the trunk also, Coldwell told him that he would have to get the key. He then returned to the cab of the truck, ostensibly to get the key, and departed abruptly with Newman. As they left, the deepfreeze and the trunk slid from the camper onto the highway pavement.

Jackson pursued in his patrol car and came upon the abandoned truck about a quarter of a mile up the road, but he was unable to find either of the appellants. After assistance arrived Jackson drove the truck, which still contained the wooden box, back to the turnpike gate. He subsequently opened all three containers, which were found to hold a total of approximately 741 pounds of marijuana. Newman and Coldwell were later apprehended and charged with the crime of which they now stand convicted. They have challenged these convictions on several grounds, but in the view which we take of this case we deem it unnecessary to consider each contention raised. We hold that the marijuana which provided the basis for these convictions was illegally seized pursuant to an illegal warrantless search conducted without probable cause. Its use as evidence was therefore improper and demands reversal.

■ The fact that the turnpike gate is located over 700 miles from the Mexican border clearly precludes consideration of this case as one involving a border search. Thus no peculiarly broad powers attach to the border patrol agent and the government's case here must rise or fall on the existence of probable cause. Almeida-Sanchez v. United

---

1. This fact has no determinative significance as the odor of marijuana was detected *after* the search was in progress. The odor of the drug did not trigger the search as in United States v. Bowman, 10 Cir., 487 F.2d 1229.

States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596.

■ The government contends that numerous factors point to the existence of probable cause. It argues that Agent Jackson's long years of experience, the Texas license plates, the large containers, and the fact that great numbers of illegal aliens had previously been discovered at this very checkpoint all indicate a sound basis for giving Jackson probable cause to believe that Coldwell and Newman were transporting illegal aliens. The government also relies, as did the court below, on United States v. Saldana, 10 Cir., 453 F.2d 352, as justification for Jackson's conduct in the case at bar. We find the government's contentions unpersuasive.

The reliance on *Saldana* is misplaced, as that case is clearly distinguishable on its facts. There two agents stopped a pickup truck with three individuals of Mexican descent in the front seat. When asked for immigration papers the passengers separately replied that they had "swum the river." The court held that at that time there arose probable cause to believe that a crime was being committed. A subsequent search was therefore justified as incident to a valid arrest.

■ No such circumstances exist here. We do not question the right of a Border Patrol Agent to briefly detain an individual for the purpose of ascertaining his nationality. To this extent Agent Jackson's initial stopping of the appellants' vehicle in the case at bar was, in and of itself, not illegal. But we find nothing in the record to support an independent finding of probable cause to conduct a search of the rear of the camper. Jackson testified that neither appellant possessed any characteristics which led him to believe that they were of Mexican extraction, that he had never before seen the pickup truck, that there had been no prior surveillance of the appellants, and that there was no advance indication or warning that the appellants were approaching the turnpike gate. Nor is there any indication of suspicious behavior on the part of either appellant prior to the initiation of the search.

■ To uphold a finding of probable cause on the facts presented would effectively authorize the search of each and every vehicle passing through this checkpoint with a border state license plate and sufficient capacity to conceal a human body; the inherent potential for abuse under such a rationale is virtually unlimited. It is significant to note in this respect that Agent Jackson admitted that he was "just indiscriminately stopping vehicles." This type of activity is not prohibited per se but cannot be escalated to frustrate the fourth amendment.

■ When Agent Jackson proceeded to the rear of the camper to investigate its contents he initiated an illegal warrantless search. The conclusion is inescapable that the invalidity of this action tainted all subsequent events leading to the ultimate seizure of the marijuana. Everything was triggered by the original illegal intrusion and the contraband evidence was thus inadmissible as the "fruit of the poisoned tree." Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Under these circumstances the government's theory of abandonment is without merit. *See* Fletcher v. Wainwright, 5 Cir., 399 F.2d 62.

Reversed.