UNITED STATES of America, Appellee,

v.

Jack M. STRICKLIN, Jr., et al., Appellants.

Nos. 75–1394, 75–1395, 75–1396, 75–1397 and 75–1398.

United States Court of Appeals, Tenth Circuit.

Argued Feb. 26, 1976.

Decided April 22, 1976.

Rehearing Denied May 17, 1976.

Lee A. Chagra, El Paso, Tex., for appellants.

W. R. Hughes, Jr., Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., and Harris L. Hartz, Asst. U. S. Atty., Albuquerque, N. M., on the brief), for appellee.

Before LEWIS, Chief Judge, and SETH and BARRETT, Circuit Judges.

SETH, Circuit Judge.

Appellants appeal their conviction of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. § 846.

Early on the morning of August 18, 1974, Officer Larry Turner of the New Mexico Department of Game and Fish was patrolling a thinly populated ranch and recreation area northeast of Roswell, New Mexico, checking for illegal nighttime hunting. At approximately 1:00 a. m., after he saw briefly a flashing light on the horizon, he contacted Wildlife Officers Tom Moody and Lloyd Haun who were also patrolling. The three officers met and decided to split up and attempt to pursue the light source. Soon thereafter two of the officers saw an airplane near the horizon.

Sometime later, Officer Turner saw two vehicles near a gate on a pipeline road. The vehicles were going away from him and the taillights indicated that one was

pulling a trailer. All three officers then observed the vehicles, and, through radio communication, determined that the vehicles had turned around. The officers then temporarily lost sight of the vehicles, decided to change positions, and attempted to again watch the vehicles. Two of the officers again spotted the two vehicles and watched for about ten minutes as the vehicles, an automobile pulling a U–Haul trailer and a pickup truck traveling ten to twenty yards ahead of it, approached and then passed them. The vehicles were seen to be sweeping their headlights and thereby illuminating the areas to either side of the road. These two vehicles were the only ones seen in the area by the officers that morning.

At approximately 3:30 a. m., Officer Turner stopped the lead vehicle, an open-bed pickup truck. Appellant Stricklin got out of the truck on the passenger side and asked Officer Turner why they had been stopped. Turner replied that he was checking for illegal hunting. The officer then went to the rear of the truck and with the aid of a flashlight saw appellants Harris, Johnson, and Franklin seated in the open bed of the pickup. Turner then asked Stricklin if they had any firearms, and he replied that they had two pistols. He also said that they were just camping. Turner asked Stricklin why they were driving around at 3:30 a. m., and he replied that they had decided to leave.

Officer Turner went to the passenger side of the truck and saw a .38 caliber revolver and a hunting knife on the seat. On the floor of the truck, he saw five battery-powered handlights as well as an attache case and a plastic zippered bag. Turner then searched the glove compartment of the truck and found a .22 magnum pistol and a starlight scope, a device used for hunting and other purposes in the nighttime.

While Turner was searching the pickup, a car pulling a U–Haul trailer drove up behind the first vehicle. The driver and sole occupant of the automobile was appellant Russell, who owned the car and who had rented the U–Haul trailer several days before. Officer Moody, who had followed appellant Russell and who had told him to pull up behind the pickup, also told him that they were investigating possible game violations. When Officer Turner asked Russell what was in the trailer, Russell responded that it contained household goods.

Officer Turner then returned to the pickup truck and began to make a more detailed search. There were several unrolled sleeping bags in the bed of the truck and he began to check them for evidence of game. He picked up one of the bags and felt the weight of a heavy object at the foot of it. He unzipped the bag and discovered two bricks of marijuana.

Meanwhile, Officer Moody was inspecting the rear of the U–Haul trailer for signs of blood or animal hair, but found none. Appellant Russell voluntarily attempted to open two padlocks on the door of the trailer, but the keys did not fit. Russell gave the keys to Officer Moody, but Moody's attempts to open the trailer doors also failed.

About 4:15 a. m., other law enforcement officers who had been called to the scene by Officer Turner arrived. Officer Jesse Franco, a narcotics agent of the New Mexico State Police, was shown the bricks of marijuana found in the sleeping bag. He then went to the rear of the U–Haul trailer where, he later testified, he detected a strong order of marijuana. Officer Franco asked appellant Russell for the keys to the trailer. When none of the keys fit, Franco and another officer pried open the trailer door enough to permit the officers to see what appeared to be several sacks containing bricks of marijuana. The appellants were placed under arrest for narcotics and game violations, and taken to town. There, when the appellants were advised of their rights, appellant Stricklin stated that he had already called a friend who would take care of all of the appellants.

A later examination of the contents of the U–Haul trailer revealed 2,250 pounds of marijuana in brick form in eighty plastic sacks. All but one of the sacks were sealed

and contained twelve to fifteen bricks of marijuana each. The open sack, which was found in the lower left front corner of the trailer, contained only eleven bricks. The keys to the padlocks on the door of the trailer were found in a shaving kit in the rear of appellant Russell's automobile.

At about 11:00 a. m. on the same morning, Officer Moody and Officer Romero of the Chaves County Sheriff's office visited a landing strip approximately eleven miles northeast of where the appellants had been apprehended. They there found fresh evidence of tire tracks on the pipeline road leading to the airstrip. The tracks appeared to be from two vehicles, one pulling a trailer. The tracks crossed the airstrip and returned to the pipeline road and on to the Red Bluff Road, the hard gravel road on which appellants were apprehended. On cross-examination, Officer Moody stated that the tracks at the airstrip appeared to match the tires of appellants' vehicles.

The appellants were convicted as noted above, and raise several grounds for reversal.

Appellants contend initially that the searches of both the truck and the U–Haul trailer were improper.

They urge that the officers did not have probable cause to stop the pickup truck initially, and that even if the stop was proper, the search of the bed of the pickup and the bedrolls was not based upon probable cause.

■ The officers stopped the vehicles upon the reasonable belief that the occupants were engaged in illegal nighttime hunting. As described above, all three officers observed the appellants' vehicles traveling for an extended period of time in a deserted area. They were moving and changing directions together. Officers Moody and Haun testified that the vehicles appeared to be "sweeping" their headlights and thereby illuminating areas to the side of the road. These circumstances provided valid probable cause for detaining the vehicles. *United States v. McCormick,* 468 F.2d 68 (10th Cir.).

■ Appellants next contend that even if the detention was proper, the search should not have extended to the bed of the truck and the bedrolls. *United States v. Newman,* 490 F.2d 993 (10th Cir.), is cited by appellants to support the argument that the present search was over-extensive, but it is not applicable. Officer Turner, when the pickup was stopped, saw a .38 caliber revolver, a hunting knife, and battery-powered handlights on the seat and floor of appellant's pickup truck. These instruments are tools of a nighttime hunter and supplied Officer Turner with additional probable cause to believe that appellants were engaged in illegal hunting activity. A further, more detailed search of the truck and its contents was fully warranted.

■ The search of the U–Haul trailer was likewise justified. Facts indicate that the officers had reason to believe that the two vehicles, the pickup truck and the automobile pulling the trailer, were traveling together as they so observed them. Also the search of the trailer was justified on the ground that Officer Franco smelled marijuana at the rear of the U–Haul. This Circuit has recognized that the odor of marijuana can supply the probable cause necessary for a search. *United States v. Bowman,* 487 F.2d 1229 (10th Cir.). While it is true that odor will not supply probable cause when an otherwise unjustified search is already in progress, *United States v. Newman, supra,* there is no evidence here that a search of the U–Haul had been commenced prior to the detection of the marijuana odor by Officer Franco.

Appellants finally argue that a warrant was necessary to validate the present search. The circumstances of the case justified the warrantless search of appellants' vehicles. *See United States v. Troutman,* 458 F.2d 217 (10th Cir.).

■ Appellants argue that the trial court erred in admitting certain testimony of Officer Moody who testified that he had visited an airstrip in the area as part of a postarrest investigation. He stated that fresh vehicle tracks were discovered at the site and that traces of marijuana were

present. On cross-examination, he testified that the tracks at the site appeared to match the tires on appellants' vehicles. Appellants objected to the relevancy of this testimony. However, the admission of Officer Moody's testimony was well within the discretion of the trial court. *United States v. Downen*, 496 F.2d 314 (10th Cir.). The officers had found in the pickup portable radios designed to work on frequencies used by aircraft.

■ The next point urged by appellants is that the evidence was insufficient to support their possession convictions. However, we must hold that this evidence, direct and circumstantial, and with reasonable inferences to be drawn therefrom, when viewed in the light most favorable to the Government constitutes sufficient substantial evidence supporting the jury's determination of the defendants' guilt beyond a reasonable doubt. *United States v. Guerrero*, 517 F.2d 528 (10th Cir.).

■ The evidence as to appellant Russell establishes without doubt that he was the owner, driver, and sole occupant of the automobile pulling the U–Haul trailer; also that he was the sole lessee of the trailer, and keys to the trailer door were in his possession. These facts are sufficient to support the jury's conclusion that he was in possession of the marijuana found in the trailer.

The other appellants contend that there is insufficient evidence to prove that any of them had possession of the marijuana found in the bedroll located in the bed of the pickup, or to prove that any of them had possession of the marijuana found in the U–Haul trailer. The Government counters that Russell and the remaining appellants were engaged in joint activity relative to the contraband, and that the evidence supports the jury's finding of joint and constructive possession of all of the marijuana by all appellants.

■ We considered constructive possession in *Amaya v. United States*, 373 F.2d 197 (10th Cir.), and considered the dominion and control necessary under 21 U.S.C. § 174. The issue arises frequently in situations where a car containing drugs is occupied by several persons. Depending somewhat on the place and quantity of the drug in the vehicle, we have started with the assumption that the driver has sole dominion and control. *United States v. Henry*, 468 F.2d 892 (10th Cir.); *Wilson v. United States*, 218 F.2d 754 (10th Cir.). In the last cited case, it was found that all the occupants of the car were engaged in a joint undertaking relative to the drugs, and hence all were in constructive possession. The Ninth Circuit, as to two occupants of a car, applied the same analysis, found no joint activity, and hence no possession by one of the two occupants. *Bettis v. United States*, 408 F.2d 563 (9th Cir.). Again, in an instance where the car was occupied by two persons, but there was no evidence of a joint purpose or relationship between the two, there was no possession by the passenger. *United States v. Ferg*, 504 F.2d 914 (5th Cir.). *See also United States v. Martinez*, 514 F.2d 334 (9th Cir.).

The evidence shows that the bricks of marijuana in the pickup were similar or identical in appearance to those in the U–Haul. It shows also that one of the sacks in the U–Haul had been opened and contained fewer bricks than did the others. The inference was certainly open to the jury that the bricks in the truck came from the sack in the U–Haul, and thus tied together the bricks, the vehicles, and the occupants. The observation of the movements of the two vehicles made by the officers over an extended period of time gives rise to the same inference. Appellant Stricklin told the officers that those in the pickup were camping and decided to leave. This again places all the appellants except Russell together. The officers testified that from the tracks, the two vehicles were together at the landing strip where marijuana had been handled.

When we consider the evidence in a light most favorable to the Government, as we must do upon a conviction such as this, we can reach no conclusion other than the appellants were all engaged in some joint activity relative to the marijuana and thus

each and all were in constructive possession of it. The jury was entirely justified in reaching the conclusion that it did.

AFFIRMED.