829 P.2d 520

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Steven Lewis RAWLINGS,
Defendant–Appellant.**

No. 19539.

Supreme Court of Idaho,
Boise, December 1991 Term.

March 20, 1992.
Rehearing Denied May 21, 1992.

Alan E. Trimming, Ada County Public
Defender and Deborah A. Whipple, Deputy
Ada County Public Defender, Boise, for

defendant-appellant. Deborah A. Whipple argued.

Larry J. EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent. Michael A. Henderson argued.

McDEVITT, Justice.

On December 21, 1989, between 4:30 a.m. and 5:00 a.m., police officers acted in response to a report of a burglary in process at Dick's Stereo Shop on Fairview Avenue in Boise, Idaho. At the scene of the alleged offense, police officers discovered a window had been broken in order to gain entry to the building. Several of the officers positioned themselves to secure the perimeter of the building, awaiting the manager of the business to facilitate their entry into the business. At least one of the officers had drawn his sidearm, contemplating the possibility of a suspect still being on the premises.

At approximately 5:00 a.m., Officer Graybill, at the scene of the reported burglary, with his sidearm drawn, had called to his attention by another officer, a man walking across a parking lot in the block immediately to the west of the site of the reported burglary. When Officer Graybill observed this individual, he had turned north and was walking through the parking lot, approximately 150 feet from the police officer. No other persons were visible in the area at that time.

Officer Graybill crossed the street, running, to overtake the individual. As the police officer approached, the individual continued walking northerly and disappeared along the west side of the funeral home which blocked the officer's view. Upon turning the corner of the funeral home building, Officer Graybill found the individual stopped in the parking lot, facing the funeral home.

Officer Graybill inquired as to what the individual (who is the defendant in this case) was doing in that location. The defendant replied that he was looking for his cigarettes and asked the police officer if he had seen them. Officer Graybill replied in the negative and inquired as to whether the defendant had any identification that the officer could examine; the individual stated that he had no identification on his person. The police officer then inquired if the defendant had a wallet; the individual stated that he did not. Thereupon, Officer Graybill directed the defendant to turn around so that the officer could pat him down to see if he had a wallet. At this moment, the defendant threw a small object in the direction of the funeral home. The police officer heard the object land in the parking lot where it made a "hollow pinging sound."

Immediately after the preceding events, another police officer appeared in the parking lot as Officer Graybill forced the defendant to the ground and the two officers took the defendant into custody. Officer Graybill then examined the area where he had seen and heard the defendant throw an object, and found a small green Excedrin bottle which contained a white substance and some green leafy material, subsequently identified as methamphetamine and marijuana. No other materials were found in this area of the parking lot.

Defendant was charged with possession of controlled substances and was bound over to the district court at a preliminary hearing on charges of possession of methamphetamine, a felony, and possession of marijuana, a misdemeanor.

Defendant entered pleas of not guilty and the matter was set for jury trial. Prior to trial, defense counsel filed a motion seeking the suppression of "all evidence seized at arrest...." Counsel for both the State and the defendant relied on the testimony presented at the preliminary hearing in arguing the motion to suppress to the trial court. The defendant alleged that the evidence against the defendant was seized as a result of a warrantless search or seizure, which is per se unreasonable under the Fourth Amendment to the United States Constitution and article I, section 17 of the Idaho Constitution, and that the action of the police officer in the instant case did not fall within any recognized exception to this principle. The trial court denied the motion to suppress. Defense

counsel renewed and urged the suppression motion at the commencement of the jury trial, and following the trial testimony of Officer Graybill. On each occasion, the trial court denied this motion.

At the conclusion of closing arguments, defense counsel moved for a mistrial based upon prosecutorial misconduct in closing arguments, which was subsequently memorialized in a written motion, each of which were denied by the trial court. The jury returned a guilty verdict on each count of possession of a controlled substance.

Defendant appealed the denial of his suppression motions and motion for mistrial. That appeal was assigned to the Court of Appeals which, after hearing, vacated the judgment of conviction, holding that "the dispositive issue in this case is whether the scope of a *Terry*-stop-and-frisk includes a police pat down search for identification." The Court of Appeals then held that it does not, and reversed the trial court.

The State petitioned for review, which petition was granted by this Court. We vacate the opinion of the Court of Appeals and affirm the decision of the trial court.

### ISSUES ON APPEAL

The issues presented on this appeal are:

1. Did the trial court err in denying the defendant's motion to suppress?

2. Did the trial court err in denying the defendant's motion for mistrial based upon prosecutorial misconduct?

### MOTION TO SUPPRESS

The defendant urges that the evidence of possession of controlled substances obtained from the discarded Excedrin bottle was obtained as a direct result, and not independent of, illegal police action and must be excluded. In this regard, defendant relies on *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Our review, therefore, must depend on an analysis of whether the defendant's disposal of the evidence was precipitated by unlawful police conduct, in violation of the Fourth Amendment to the United States Constitution, and/or article I, section 17 of the Idaho Constitution.

### I. LEGALITY OF THE STOP

An individual who is accosted by a police officer and has his freedom to walk away restrained has been seized. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Not all seizures of the person need be justified by probable cause to arrest for a crime; a police officer may, in appropriate circumstances and in an appropriate manner, detain a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880. Such a seizure is justified under the Fourth Amendment if there is an articulable suspicion that the person has committed or is about to commit a crime. *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

There is no dispute that the defendant was "seized" within the meaning of the Fourth Amendment when he submitted to Graybill's authority. *Terry,* 392 U.S. at 16, 88 S.Ct. at 1879; *see California v. Hodari,* — U.S. —, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), (suspect had not submitted to police authority and thus no seizure had occurred). The defendant maintains, however, that the seizure was invalid because the officer lacked a sufficient legal basis for the stop. Whether an officer had the requisite reasonable suspicion to conduct an investigatory stop is determined on the basis of the totality of the circumstances. *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *State v. Johns,* 112 Idaho 873, 736 P.2d 1327 (1987).

In the instant case, police officers responded to a report of a burglary in the predawn hours of December 21, 1989. The police arrived at a business property situated upon a business thoroughfare, with visible signs of forced entry having been made to the building. The police officers

believed that the perpetrator could still be on the premises.

The defendant was the only person in the area other than the police officers. The defendant was walking away from the locale of the reported burglary. The defendant departed from a walkway and proceeded to cross the parking lot, which course of travel would take him out of the vision of the police officers. There was a motel in the direction in which the defendant was traveling. It is possible that the defendant could have been on an innocent mission, but these facts, together with the reported crime, provided objectively reasonable grounds which were adequate to support a police officer's suspicion of criminal activity. These facts, in their totality, provide a basis for the trial court's conclusion that the police officer's stop of the defendant was a valid detention of a person for the purpose of investigating possible criminal activity, although there was no probable cause to make an arrest. *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880.

■ Defendant further asserts that the police officer running toward him with a drawn weapon was "outrageous and totally unreasonable under the circumstances" and exceeded any permissible investigative stop. An investigative stop is not converted into an arrest with a police officer taking the reasonable precaution of drawing weapons for their own safety. *See United States v. White*, 648 F.2d 29 (D.C.Cir.), *cert. denied*, 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233 (1981).

1. A. [Officer Graybill] I watched him as he went behind the funeral home and I proceeded to—to follow him to confront him and find out who he was and what he was doing there.

Q [Counsel] Did you confront him?
A Yes, I did.
Q And do you recall what you said to him and....
A Well, he—he told me that—asked me if I had seen his....

. . . . .

A Mr. Rawlings told—asked me if I had seen his cigarettes.
Q And did you respond?
A I told him that I hadn't seen any cigarettes and I asked him what he was doing in the area.

The testimony is undisputed that the police officer had drawn his weapon out of concern for his personal safety at the site of the reported criminal activity; that the officer witnessed the defendant approximately 150 feet away under circumstances and at a time and in a place that were a reasonable basis for the suspicion that the defendant had been involved with the reported crime; it was necessary for the police officer to run in order to overtake the defendant. Under the circumstances, the conduct of the police officer was reasonable and not unduly coercive. The stop of the defendant was made on the basis of a police officer's reasonable suspicion of criminal activity, and was thus valid.

## II. LEGALITY OF THE SEARCH

■ It is clear that in a *Terry* stop, an officer has the authority to conduct a limited self-protective pat down search for weapons while conducting an inquiry pursuant to a stop. *Ybarra v. Illinois*, 444 U.S. 85, 93–94, 100 S.Ct. 338, 343, 62 L.Ed.2d 238 (1979); *United States v. Davis*, 482 F.2d 893, 906 (9th Cir.1973). Such a search is allowed to permit a police officer to conduct the inquiry without fear of violence being inflicted upon the officer's person. *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

In this instance, however, the evidence is clear that although a weapons pat down would have been permissible under all the circumstances of this case, the officer informed the defendant that he desired to "pat him down for a wallet." [1]

Q And did he respond?
A I think he said he was looking for his cigarettes.
THE COURT: What time was this, Officer?
A This was approximately 5:00 in the morning.
THE COURT: Okay, thank you.
Q What continued in the conversation?
A I told him that he'd have to come with me—or no, actually, I asked him for some identification.
Q Did he produce any?
A No, he didn't.
Q And then what did you do?
A And I believe I asked him to turn around so that I could pat him down for a wallet.
Q And did you pat him down?

The State urges that under the authority of *Terry* and its progeny, that this Court should hold that a police officer may conduct a limited search of a suspect for purposes of "proof of identification." *Adams v. Williams*, 407 U.S. at 146, 92 S.Ct. at 1923; *State v. Flynn*, 92 Wis.2d 427, 285 N.W.2d 710 (1979), *cert. denied*, 449 U.S. 846, 101 S.Ct. 130, 66 L.Ed.2d 55 (1980).

Prior to reaching the issue urged by the State, we must determine whether or not the request by Officer Graybill, "I believe I asked him to turn around so that I could pat him down for a wallet," constituted an initiation of a search for identification, which, if unlawful, would be unconstitutionally coercive.

We find no authority for the proposition that the declaration by Officer Graybill that he desired to "pat him down" turned a permissible *Terry* stop into a "search" for identification. The record reflects that Officer Graybill did not touch defendant or take any action other than the quoted statement before the defendant abandoned the property.

This opinion does not deal with the issue of legality of a search for identification pursuant to a *Terry* stop. Because of the conclusion we reach, that issue need not be addressed here.

We therefore hold that the trial court properly denied the defendant's motion to suppress.

## III. PROSECUTORIAL MISCONDUCT

■ Appellant urges that the closing statement of the State attorney consists of an impermissible comment on defendant's failure to testify in violation of the Fifth and Fourth Amendments to the United States Constitution and art. I, § 3 of the Idaho Constitution. The statement upon which the appellant relies for this argument is:

Does not erase the facts that are before you by testimony. The testimony that is

A At that point he—he drew back and threw something in his right hand towards the funeral home.
Q Were you able to see what that something was at all at that time?

before you is unrebutted evidence. There has been no rebuttal of that evidence. R. 35, l. 13–16.

Counsel for the defendant timely objected to this argument.

The trial court addressed the issue on defendant's motion for mistrial as follows:

When the Prosecutor moves into the area of commenting on unrebutted or uncontradicted evidence he must do so with caution. If there is any direct connection between the remark and the fact that the defendant did not testify, that would be impermissible. I think *State versus Hodges*, however, points up that a bare remark that evidence is uncontroverted, or evidence is unrebutted, does not necessarily give rise to the inference that it is a comment on the defendant's failure to testify.

*State versus Hodges* points up that an equal inference is simply a comment on the weight of the evidence, the weight of the other evidence that may have been, or the weight of the evidence that was offered in this case.

The only remark made by the Prosecutor was that the evidence was unrebutted. Counsel objected. At that point I cautioned the Prosecutor in general terms and advised him to argue on the evidence offered rather than on the conclusions. The Prosecutor changed his tact and went off into other areas.

I think the case is within *State versus Hodges*. To get to a conclusion that the Prosecutor's remark was a comment on the failure of the defendant to testify requires, in my mind, inference on inference. Maybe inference, on inference, on inference. I don't think I have to go that far.

T. p. 151–52.

We agree with the decision of the trial court that under all of the circumstances of the trial and counsel for defendant's closing statement that the prosecutor's state-

A No, I didn't see exactly what it was, but I heard it hit in the parking lot.

ment was a comment on the evidence and not an impermissible reference to the defendant's failure to testify. *State v. Hodges*, 105 Idaho 588, 591, 671 P.2d 1051, 1054 (1983). *See United States v. Robinson*, 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988).

## CONCLUSION

We affirm the decision of the trial court.

BAKES, C.J., and BOYLE, J., concur.

BISTLINE, Justice, concurring in part, dissenting in part.

I concur with Parts I and III of the majority opinion, however, I am unable to agree with their resolution of Part II dealing with the legality of the search.

The majority correctly frames the issue in Part II as "whether the defendant's disposal of the evidence was precipitated by unlawful police conduct, in violation of the fourth amendment to the United States Constitution, and/or article I, section 17 of the Idaho Constitution." This Court's resolution of the issue, however, is blatantly incorrect. The majority reasons that because Officer Graybill did not touch Rawlings, but simply requested that Rawlings turn around so he could pat Rawlings down for a wallet, no impermissible search for identification occurred, and Rawlings was not coerced by unlawful police activity to abandon his property. A better analysis has been fashioned by the Court of Appeals, and it is appropriate to quote a portion of that opinion:

> Rawlings contends that the search was an illegal warrantless search not within any judicially recognized exception. The state submits that we need not reach this issue because Rawlings threw the aspirin bottle before the officer had an opportu-nity to conduct the search, thus negating any inference that Rawlings' disposal of the bottle was prompted by the threat of the search. The state avers that, without a nexus to the allegedly unlawful conduct, the discarded evidence was 'abandoned.'
>
> However, Graybill's testimony, concerning the stop, demonstrates that Rawlings threw the bottle only *after* Graybill directed him to submit to the identification search.[2] Although Graybill did not conduct the search, his demand upon Rawlings clearly constituted a sufficient initiation or threat of a search, which, if unlawful, would be deemed unconstitutionally coercive. *See United States v. Newman*, 490 F.2d 993, 995 (5th Cir.1974); *Fletcher v. Wainwright*, 399 F.2d 62 (5th Cir.1968). *See also* RINGLE, SEARCHES & SEIZURE, § 8.4(a), at 8–38.4. Thus, we must determine whether Graybill was constitutionally authorized to conduct such a search.
>
> The fourth amendment 'provides protection to the owner of every container that conceals its contents from plain view.' *United States v. Ross*, 456 U.S. 798, 822–23 [102 S.Ct. 2157, 2172, 72 L.Ed.2d 572] (1982). A search of a wallet, like that of a purse or other bag carried on the person, 'is undoubtedly a severe violation of the subjective expectations of privacy.' *New Jersey v. T.L.O.*, 469 U.S. 325, 338 [105 S.Ct. 733, 741, 83 L.Ed.2d 720] (1985). Warrantless searches are per se unreasonable under the fourth amendment, subject only to a few specifically established and will delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357 [88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *State v. Bottelson*, 102 Idaho 90, 92, 625 P.2d 1093, 1095 (1981). The burden rests with the state to demonstrate that a warrantless

---

**2.** The transcript from the preliminary hearing contains the following:

> COUNSEL: What continued in the conversation?
> OFFICER GRAYBILL: I told him that he'd have to come with me—or no, actually, I asked him for some identification.
> COUNSEL: Did he produce any?
> OFFICER GRAYBILL: No he didn't.

> COUNSEL: And then what did you do?
> OFFICER GRAYBILL: And I believe I asked him to turn around so that I could pat him down for a wallet.
> COUNSEL: And what did you do then?
> OFFICER GRAYBILL: At that point he—he drew back and threw something in his hand right towards the funeral home [a business adjacent to the parking lot].

search was carried out pursuant to one of those exigencies. *Arkansas v. Sanders*, 442 U.S. 753, 760 [99 S.Ct. 2586, 2591, 61 L.Ed.2d 235] (1979); *Bottelson*, 102 Idaho at 92, 625 P.2d at 1095.

In the present case, the state admits the search was warrantless but maintains that Graybill conducted a valid search justified under the 'stop-and-frisk' exception, recognized in *Terry*, 392 U.S. at 1 [88 S.Ct. at 1868]. The *Terry*-frisk exception permits an officer who has validly detained a person, and who has reason to believe that the person is armed and dangerous, to conduct a limited self-protective pat-down search for weapons while conducting the inquiry. *Ybarra v. Illinois*, 444 U.S. 85, 93–94 [100 S.Ct. 338, 343–44, 62 L.Ed.2d 238] (1979); *United States v. Davis*, 482 F.2d 893, 906 (9th Cir.1973). The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence. *Adams v. Williams*, 407 U.S. 143, 146 [92 S.Ct. 1921, 1923, 32 L.Ed.2d 612] (1972).

. . . .

[W]e [now] address the dispositive issue in the case: whether Graybill was justified in commencing a search for Rawlings' wallet in order to determine his identity. The state contends that the search was justified under *Terry* and its progeny as a limited intrusion reasonably necessary to conduct the investigation. The Supreme Court decision in *Adams v. Williams* established that an officer may make 'a brief *stop* of a suspicious individual, in order to determine his identity.' 407 U.S. at 146 [92 S.Ct. at 1923] (emphasis added). The state contends that a necessary corollary to this police authority is the officer's right to *search* the suspect for proof of identification. Without such a right, the state continues, the right to ascertain the suspect's identity is rendered a mere fiction. In so arguing, the state maintains that a frisk under *Terry* is not restricted to a search for weapons. We disagree.

Although the *Adams* decision discontinued the *Terry* requirement that an

officer harbor a reasonable apprehension of danger in order to justify investigative *detentions*, '*Adams* did not eliminate that requirement for any *search* conducted incident to the detention.' *State v. Zapp*, 108 Idaho 723, 727, 701 P.2d 671, 675 (Ct.App.1985) (emphasis original). The scope of a search pursuant to an investigative stop is clearly confined to a search for the protection of the officer and those nearby. Any intrusion beyond that necessary to ascertain whether weapons are involved becomes a search for evidence which the police may not do without a warrant, except as an incident to a lawful arrest, or with the consent of the person concerned. As the United States Supreme Court unequivocally declared in *Ybarra*, 'nothing in *Terry* can be understood to allow ... any search whatever for anything but weapons,' and that it would continue to maintain the 'narrow scope' of the *Terry* exception. *Ybarra*, 444 U.S. at 93–94 [100 S.Ct. at 343]. We believe this pronouncement constitutes the highest authority on the subject and forecloses this Court from accepting the position urged by the state. We therefore hold that a search for identification is beyond the scope of *Terry* and that Graybill's initiation of such a search was unlawful.

Assuming, however, that *Ybarra* has not laid to rest the question before us, and that there exists the limited exception for identification searches, as held in *State v. Flynn*, [92 Wis.2d 427], 285 N.W.2d 710, *cert. denied*, 449 U.S. 846 [101 S.Ct. 130, 66 L.Ed.2d 55] (1979) *cited in* 3 W. LAFAVE, SEARCH AND SEIZURE § 9.4(g), at 539 (2nd ed. 1987), we again must conclude that the particular search conducted in this case was unreasonable under the fourth amendment.

. . . .

In sharp contrast to the circumstances presented in *Flynn* and its progeny, Graybill initiated the search for Rawlings' wallet without providing Rawlings any reasonable opportunity to otherwise identify himself. The record is void of

any evidence that Graybill even asked Rawlings his name. We note that, had Graybill obtained Rawlings' name, birth date, and address, he could have run a radio check for warrants and other background information, which might also have revealed whether Rawlings was being truthful about his identity. Upon the record before us, however, we can scarcely conclude that Graybill's conduct was 'the least intrusive means reasonably available to verify or dispel the officer's suspicion.' Thus, even applying the analysis set forth in *Flynn*, we conclude that Rawlings' failure, or in this case, his inability,[3] [footnote 4 in original text] to produce the documentary proof of identity sought by the officer did not authorize the officer to conduct the search.

The state questions whether a suspect can defeat the purpose of an investigatory stop by refusing to provide, or claiming that he does not have, any identification. By framing the issue in this way, however, the state fails to distinguish between the suspect who refuses to cooperate and identify himself or herself to police and the one who does not produce documentary proof of identity [footnote omitted]. Where an individual is not carrying such proof, an identification search, no matter how broad, will not further the purpose of obtaining identification. The fact that a citizen happens to be without identifying papers does not provide a reasonable basis for a police search in the absence of probable cause [footnote omitted].

### CONCLUSION

We hold that a frisk for identification falls outside of the purview of police conduct constitutionally permitted during an investigatory stop. The conclusion is inescapable that the officer's command that Rawlings submit to such a search precipitated Rawlings' attempt to divest himself of the contraband and the ultimate seizure of the evidence by police.

Under these circumstances, the state's theory of abandonment must be rejected. *See United States v. Newman*, 490 F.2d 993, 995 (5th Cir.1974); *Fletcher v. Wainwright*, 399 F.2d 62 (5th Cir.1968); RINGLE, SEARCHES & SEIZURE, § 8.4(a), at 8–38.4. Because the state's evidence was obtained as a consequence of police conduct violative of the fourth amendment, it should have been excluded from evidence....

*State v. Rawlings*, Slip Op. CA–93 (1991).

Because Rawlings' conviction should be reversed for the reasons stated in the opinion of the Court of Appeals, I decline to join the majority opinion.

JOHNSON, Justice, concurring and dissenting.

I concur with part I (Legality of the Stop) and part III (Prosecutorial Misconduct) of the Court's opinion. I respectfully dissent from part II (Legality of the Search) of the Court's opinion.

Following appeal from the trial court, this case was initially assigned to our Court of Appeals. On June 6, 1991, the Court of Appeals issued its decision reversing the trial court's ruling denying the motion to suppress. The essence of the Court of Appeals' decision is contained in its conclusion:

We hold that a frisk for identification falls outside of the purview of police conduct constitutionally permitted during an investigatory stop. The conclusion is inescapable that the officer's command that Rawlings submit to such a search precipitated Rawlings' attempt to divest himself of the contraband and the ultimate seizure of the evidence by police. Under these circumstances, the state's theory of abandonment must be rejected. Because the state's evidence was obtained as a consequence of police conduct violative of the fourth amendment, it

---

**3.** Although not a fact of record in this case, evidently Rawlings did not possess identification or a wallet on his person at the time he was stopped. According to his counsel's representa-tions at oral argument on this appeal, police later found Rawlings' wallet in his car, parked several blocks away.

should have been excluded from evidence.

*State v. Rawlings,* 1991 Opinion No. CA–93 at 12 (June 6, 1991) (citations omitted).

I agree with this analysis.