942 P.2d 568

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Craig L. HARRIS, Defendant–Appellant.**

No. 23192.

Court of Appeals of Idaho.

July 8, 1997.

Gordon Law Offices, Boise, for Defendant–Appellant. Philip H. Gordon argued.

Alan G. Lance, Attorney General; Kimberly A. Coster (argued), Deputy Attorney General, Boise, for Plaintiff–Respondent.

LANSING, Judge.

Craig L. Harris was convicted of trafficking in methamphetamine, I.C. § 37–2732B(a)(3), based upon quantities of methamphetamine found during a search of his car following his arrest. Harris argues on appeal that the Fourth Amendment prohibition against unreasonable searches and seizures was violated by the initial investigative stop, by a pat-down search of Harris, and by the automobile search conducted incident to his arrest. For the following reasons we affirm.

### FACTS

The following facts are drawn from testimony presented at the hearing on Harris's suppression motion and at the preliminary hearing. At about 6 a.m. on September 29, 1995, Lori Miller called 911 to report that she had just received several harassing phone calls which she believed were being made from a car parked outside of her house. She reported that a "fancy" car was parked in front of her house with a light on and that the occupant was holding a telephone. She could not identify the occupant's gender. In response to the call, Officer Markle of the Boise Police was dispatched to Miller's address. When he arrived, he saw a Corvette parked in the middle of the road in front of Miller's house. The dome light was on and the sole occupant was holding a cellular phone to his ear. When Officer Markle turned his spotlight on the car, the occupant turned, looked at either the officer or his car,

and drove away. Officer Markle recognized the driver, Craig Harris, from prior contacts and was aware that Harris had previously been arrested for assault.

At this point, the officer activated his patrol car's overhead lights, but Harris drove about three or four houses away and pulled into the driveway of his own home. Officer Markle stopped the patrol car behind Harris's car and saw Harris bend down out of view momentarily before Harris exited the car and walked toward the house. Officer Markle then got out of his vehicle and told Harris that they needed to talk about the phone calls to Miller's residence. Harris admitted that he had made the calls. When two other officers, Doney and Hagler, arrived, Officer Markle advised them that he was going to talk to Miller, leaving Doney and Hagler to interview Harris. Markle also told the other two officers that Harris had made furtive movements in the car and had not yet been searched for weapons.

In conducting a pat-down search, Officer Hagler found a buck knife in Harris's pocket. He also felt bulges in Harris's front pockets. He then asked for Harris's consent to examine the contents of the pockets. There is conflicting testimony regarding the extent of Harris's consent. However, Officer Hagler removed from Harris's pockets a wad of cash and a vial containing white powder. Believing the substance in the vial to be methamphetamine, Officer Hagler arrested Harris and placed him in the police car. The officers then searched Harris's vehicle, finding two fully-loaded semi-automatic pistols, a cooler containing three plastic baggies of white powder which was later identified as methamphetamine, and a substantial sum of money.

Based upon the amount of methamphetamine found in the automobile, Harris was charged with trafficking in methamphetamine, I.C. § 37–2732B(a)(3). Harris filed a motion to suppress evidence found during the pat-down and during the search of his vehicle on the ground that the searches violated his Fourth Amendment right to be free from unreasonable searches and seizures. Upon denial of the motion, Harris conditionally

pleaded guilty to trafficking in methamphetamine.

On appeal, Harris raises three issues. First, he argues that Officer Markle lacked reasonable suspicion to justify stopping Harris to question him about the telephone calls to Miller's residence. Next, he argues that, even if Officer Markle did have reasonable suspicion for the stop, Harris did not consent to the search of his pockets. Finally, Harris argues that even if the stop and the body search were constitutionally permissible, the search of his automobile was not.

## ANALYSIS

■ A denial of a motion to suppress evidence presents mixed questions of law and fact. Thus, our review is bifurcated. We accept the trial court's findings of fact if they are supported by substantial evidence, but freely review the application of constitutional principles to the facts as found. *State v. Carr*, 123 Idaho 127, 129, 844 P.2d 1377, 1379 (Ct.App.1992).

### A. The Stop of the Vehicle

■ Harris asserts that Officer Markle did not have a reasonable justification for stopping him. Under the Fourth Amendment, an officer is justified in stopping a person to investigate possible criminal behavior if articulable facts known to the officer give rise to a reasonable suspicion that the person has committed or is about to commit a crime. *United States v. Brignoni–Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2581–82, 45 L.Ed.2d 607 (1975); *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968); *State v. Rawlings*, 121 Idaho 930, 932, 829 P.2d 520, 522 (1992). Whether a reasonable suspicion existed is determined by looking at the totality of the circumstances and the facts available to the officer at the moment of the seizure. *Id.* Where, as here, the officer acted in response to a bulletin from police dispatch, we examine the information received by the police that was the basis for the dispatch message. *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); *State v. Sevy*, 129 Idaho 613, 615, 930 P.2d 1358, 1360 (Ct. App.1997). Thus, we must consider the facts known to the dispatcher who received Lori Miller's call as well as the facts known to Officer Markle when he activated his overhead lights in an attempt to detain Harris.

■ In her call to the police Ms. Miller reported that she had received several harassing telephone calls in the early morning hours. She had not spoken to the caller, for when she answered the telephone, she heard only a beeping sound. She believed the calls were coming from a car parked outside her house because she could see that the vehicle's occupant was holding a cellular phone. Upon arriving at Miller's address, Officer Markle saw a car parked outside with the dome light on, occupied by a man who was holding a cellular phone to his ear. When Officer Markle shone his spotlight in the car, he recognized the occupant as Harris, whom he knew to have a criminal record. We conclude that the totality of these facts gave Officer Markle a reasonable suspicion that Harris was the person placing the calls to Miller and that the calls violated a statute prohibiting the use of a telephone to annoy or harass, I.C. § 18–6710. Therefore, Officer Markle was justified in stopping Harris, and Harris's Fourth Amendment rights were not violated by the stop.

### B. The Search of Harris's Pockets

■ We next consider Harris's contention that Officer Hagler's removal of the glass vial from Harris's right pocket was an unlawful search and seizure. It is well settled that, if an initial stop is lawful, a police officer has the right to conduct a pat-down search of the detainee for the officer's safety and to remove anything that feels like a weapon. *See Terry*, 392 U.S. at 24–26, 88 S.Ct. at 1882; *Rawlings*, 121 Idaho at 933, 829 P.2d at 523. Accordingly, Officer Hagler's removal of Harris's buck knife is not at issue. However, at the suppression hearing Officer Hagler acknowledged that the bulges in Harris's pockets did not feel like weapons. Therefore, the officer's right to examine the contents of Harris's pockets during the investigative stop was dependent upon Harris's consent to the search.

■ As a threshold matter, we will address the applicable burden of proof on the consent issue. Harris contends that the State bore the burden of proving consent by "clear and convincing evidence." Harris cites a 1972 decision of the Idaho Supreme Court, *State v. Harwood,* 94 Idaho 615, 618, 495 P.2d 160, 163 (1972), where it is stated that "the burden is on the State to prove by clear and convincing evidence both that the consent was given and that such consent was knowing and voluntary." For that proposition, the *Harwood* opinion cited *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), and *State v. Douglas,* 260 Or. 60, 488 P.2d 1366 (1971). Subsequently, however, the United States Supreme Court has unequivocally held that a preponderance of the evidence standard may be utilized for all suppression issues, including questions regarding a suspect's consent to a search. *Lego v. Twomey,* 404 U.S. 477, 487, 92 S.Ct. 619, 625–26, 30 L.Ed.2d 618 (1972); *United States v. Matlock,* 415 U.S. 164, 177 n. 14, 94 S.Ct. 988, 996 n. 14, 39 L.Ed.2d 242 (1974). In *Colorado v. Connelly,* 479 U.S. 157, 167–68, 107 S.Ct. 515, 521–22, 93 L.Ed.2d 473 (1986), with respect to proof of waiver of *Miranda* rights, the Supreme Court said, "[W]e have never held that the 'clear and convincing evidence' standard is the appropriate one." In addition, in *State v. Culbertson,* 105 Idaho 128, 130, 666 P.2d 1139, 1141 (1983), the Idaho Supreme Court held that the standard for the State's burden to prove a voluntary and knowing waiver of a suspect's *Miranda* rights is proof by a preponderance of the evidence. Although the issue in *Culbertson* was waiver of *Miranda* rights and not consent to a search, the Supreme Court's opinion does not suggest that the standard of proof in those two circumstances should differ, and the Court discussed the issue in broad terms concerning the standard of proof that should apply "in a suppression hearing." *Id.* Relying upon *Culbertson,* in *State v. Aitken,* 121 Idaho 783, 784, 828 P.2d 346, 347 (Ct.App.1992), this Court stated that a preponderance of the evidence standard applied where the State sought to prove that the defendant's confession and his consent to a search were voluntary. In our view, *Har-wood's* adoption of the "clear and convincing" standard has been undermined by subsequent United States Supreme Court decisions and effectively overruled by *Culbertson.* Accordingly, the applicable standard for the State's proof that Harris consented to the search of his pockets was proof by a preponderance of the evidence.

The testimony is conflicting as to whether Harris consented to Officer Hagler's removal of the contents of Harris's pockets. According to Harris, after Officer Hagler felt the bulge created by the wad of cash in Harris's left pocket, he asked if he could see the money, and Harris answered "yes," assuming that he would be allowed to remove the contents to show the officer. Instead, Officer Hagler reached in and removed the contents of both pockets, including the glass vial in Harris's right pocket. Officer Hagler, however, gave contrary testimony. He said that, after feeling the bulge in the left pocket, he asked if he could look in that pocket, to which Harris responded, "Go right ahead," and the officer then removed the money. The officer further testified that he had a separate, similar exchange with Harris when he felt an object in the right pocket. The officer again asked to look in the pocket and Harris said, "Go right ahead." Harris asserts that, on cross-examination, Officer Hagler confirmed Harris's version of the conversation by admitting that his question to Harris might have been, "Do you mind if I look at the money?" However, that concession on cross-examination would bear upon only the search of Harris's left pocket where the officer felt the wad of money; it does not undermine the officer's testimony that he separately requested and received consent to search Harris's right pocket where the vial of methamphetamine was found. Additionally, to corroborate the evidence of Harris's consent, the State played a tape recording of a conversation between Officer Hagler and Harris which took place after Harris was in the patrol car. On the tape, Officer Hagler asked why Harris had consented to the search of his pockets when he knew they

contained drugs. Harris responded he did not know what was in the vial.[1]

■ When, as in this case, the evidence is conflicting, we defer to the district court's findings of fact and will not disturb those findings if they are supported by substantial evidence. *Carr, supra; State v. Shepherd,* 118 Idaho 121, 122, 795 P.2d 15, 16 (Ct.App. 1990); *State v. McAfee,* 116 Idaho 1007, 1008, 783 P.2d 874, 875 (Ct.App.1989). The district court found that the tape recording of the conversation between Harris and Officer Hagler confirmed the officer's version of events and that Harris had consented to the search. This finding was based upon substantial evidence. Therefore, we affirm the district court's denial of Harris's motion to suppress the evidence found in his pockets.

## C. The Search of the Automobile

■ Finally, we address Harris' argument that the search of his car was not a valid search incident to arrest. When an officer has made a lawful arrest of an occupant of a vehicle, he or she may search the passenger compartment incident to the arrest in order to prevent the suspect from destroying evidence or acquiring a weapon from within the vehicle. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *State v. Smith,* 120 Idaho 77, 813 P.2d 888 (1991); *State v. Foster,* 127 Idaho 723, 905 P.2d 1032 (Ct.App.1995); *State v. Johnson,* 126 Idaho 859, 862, 893 P.2d 806, 809 (Ct.App.1995). In *Foster* we held that automobiles may be searched incident to an arrest only if the automobile was occupied by the suspect at the time of the arrest or when the police signaled the driver to stop or otherwise initiated contact with the suspect. *Foster,* 127 Idaho at 730, 905 P.2d at 1039. In the present case, Harris urges that the search of his automobile was unlawful under the standards enunciated in *Foster.* This argument is without merit. Officer Markle signalled Harris to stop by activating his overhead lights while Harris was occupying the vehicle. A hasty exit from the automo-

bile *after* an officer has initiated contact does not enable a suspect to avoid a search of the passenger compartment incident to arrest. Accordingly, we conclude that the search of Harris's automobile was a permissible search incident to his arrest, and the district court correctly declined to suppress the evidence found in the vehicle.

### CONCLUSION

We find no error in the district court's determinations that the stop of Harris was justified by reasonable suspicion of criminal activity, that the subsequent search of Harris's pockets was conducted with his consent, and that the search of Harris's automobile was a permissible search incident to his arrest. Accordingly, the district court's order denying the motion to suppress evidence is affirmed.

WALTERS, C.J., and PERRY, J., concur.

---

1. Harris asserted at oral argument on this appeal that the recorded conversation should not have been admitted into evidence at the suppression hearing because Harris had not been informed of his *Miranda* rights. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

However, this alleged *Miranda* violation was not raised as an issue on appeal in Harris's appellant's brief, and it therefore will not be considered by this Court. *See State v. Raudebaugh,* 124 Idaho 758, 763, 864 P.2d 596, 601 (1993).