981 P.2d 1160

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Charles A. HARWOOD, Defendant–Appellant.**

No. 24602.

Court of Appeals of Idaho.

July 21, 1999.

John M. Adams, Chief Kootenai County Public Defender; Gary I. Amendola, Deputy Public Defender, Coeur d'Alene, for appellant. Gary I. Amendola argued.

Hon. Alan G. Lance, Attorney General; Rebekah A. Cude, Deputy Attorney General, Boise, for respondent. Rebekah A. Cude argued.

Before LANSING, Judge, SCHWARTZMAN, Judge and HARDING, Judge Pro Tem

## PER CURIAM.

Charles A. Harwood appeals the district court's denial of his motion to suppress evidence seized from his motel room after Harwood gave officers consent to enter the room to search for another person.

## BACKGROUND

The preliminary hearing transcript, which was the only evidence presented on Harwood's suppression motion, reveals the following facts. On April 2, 1997, Harwood was in his rented room at a motel in Coeur d'Alene. A bail bondsman who was looking for a bondee named Christopher Gosney obtained information that Gosney was in Harwood's room. The bondsman asked for police assistance, and four officers responded to the request. Detectives Turner and Hildebrandt, two other officers, and the bondsman went to Harwood's room, knocked on the door, and requested Harwood's permission to enter and search for Gosney. Harwood consented to this entry and search.

Detective Hildebrandt struck up a conversation with Harwood, who was sitting on the bed, while others conducted the search. According to Hildebrandt's testimony, as he was talking to Harwood, Detective Turner motioned toward a fanny pack that was under the foot of the bed, or said something about it. Harwood then reached toward the fanny pack and said something to the effect of, "That's not mine." Hildebrandt immediately instructed Harwood not to reach under the bed because he feared Harwood might be reaching for a weapon. A discussion ensued about the fanny pack. During the conversation, Harwood disclaimed ownership of the fanny pack again, stated that it belonged to a woman he met at a bar, and said that he had no way of getting in touch with the owner.

He further indicated that he did not know what was in the fanny pack but that he did not believe there was any identification in it.

Detective Hildebrandt asked Harwood whether he could take the fanny pack as "found property." Harwood consented. Hildebrandt then took the fanny pack to the hallway outside the room where a drug dog was waiting. The dog alerted to the bag. The officers then searched the bag and found a green leafy substance, a white powdery substance, baggies, a gram scale, and $1,200 in cash. The fanny pack also contained a video rental card that was later identified as belonging to Harwood. A test revealed that the white powder was methamphetamine.

Harwood was charged with possession of a controlled substance with intent to deliver, I.C. § 37–2732(a)(1)(A). He filed a motion to suppress the evidence found in the fanny pack on the ground that it was the product of an unlawful detention and search. The district court denied the motion, holding that Harwood could not claim he had a privacy interest in the fanny pack because he had disclaimed ownership of the pack in his conversation with police. Harwood thereafter pleaded guilty, reserving his right to appeal the denial of his suppression motion.

## ANALYSIS

■ Generally, one who challenges the legality of a search must establish that he or she had a legitimate expectation of privacy in the thing searched. *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633, 641 (1980). One who voluntarily abandons property prior to the search cannot be said to possess the requisite privacy interest. *Abel v. United States,* 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668, 687 (1960). Abandonment, in the Fourth Amendment context, occurs through words, acts, and other objective facts indicating that the defendant voluntarily discarded, left behind, or otherwise relinquished his interest in his property. *See United States v. Ramos,* 12 F.3d 1019, 1023 (11th Cir.1994): *Bond v. United States,* 77 F.3d 1009, 1013 (7th Cir. 1996); *United States v. McDonald,* 100 F.3d 1320 (7th Cir.1996). If the abandonment is caused by illegal police conduct, however, the

abandonment is not voluntary. *See United States v. Roman* 849 F.2d 920, 923 (5th Cir. 1988); *United States v. Tolbert,* 692 F.2d 1041, 1045 (6th Cir.1982).

Harwood does not contest the court's conclusion that his disclaimer of ownership of the fanny pack amounted to an abandonment, which ordinarily would preclude an assertion of an expectation of privacy. Rather, on appeal, Harwood contends that his statements to police disassociating himself from the fanny pack were themselves the result of unlawful police activity that preceded these disclaimers.

■ The disposition of motions to suppress evidence for violation of constitutional rights present mixed questions of fact and law. Here, the only pertinent evidence is the testimony of a single witness, Detective Hildebrandt, that was given at Harwood's preliminary hearing. On appeal, we defer to the trial court's findings of fact if they are supported by substantial evidence, but we freely review the trial court's determinations as to whether constitutional requirements have been satisfied in light of the facts found. *State v. Jordan,* 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct.App.1992).

### A. Temporal Scope of Consent

First, Harwood contends that although he consented to the officers' entry into his motel room, the officers overstayed that consent because they remained in the room after determining that Gosney was not present. According to Harwood, their seizure and search of the fanny pack was a product of this unlawful extension of their occupation of the room.

■ We begin by noting our agreement with an observation of the Delaware Supreme Court that "a consent to search does not mean the constitutional protection against unreasonable searches and seizures has been waived for all time and for all things." *Gray v. State,* 441 A.2d 209, 221 (Del.1982). Rather, the temporal scope of a consent to a search is a factual determination to be made based upon the totality of the circumstances. *See People v. Trujillo,* 40 Colo.App. 186, 576 P.2d 179, 181 (1977);

*State v. Williams,* 67 N.C.App. 519, 313 S.E.2d 236, 237 (1984).

■ The circumstances in this case, however, do not substantiate Harwood's claim. Harwood's consent to the search did not indicate a specific amount of time the officers could remain in the room, nor did Harwood attempt to terminate his consent to the officers' presence at any time. *Compare State v. Staatz,* 132 Idaho 693, 978 P.2d 881 (Ct. App.1999). Harwood asserts that the police "lingered" after the search for Gosney was completed, but the evidence does not indicate that the officers unreasonably lingered in the room nor even that they remained after the search for Gosney was completed. From the testimony, the trial court could reasonably infer that the conversation about the fanny pack began while the search for Gosney was underway or only moments after it was concluded. The record is clear that Harwood's disclaimer of ownership of the fanny pack was spontaneous and was not the result of any police intimidation or interrogation. The totality of the circumstances, as shown by the testimony, does not compel a conclusion that Harwood's consent to the police entry had dissipated, or that the police had unreasonably prolonged their stay at the time Harwood denied owning the fanny pack. Therefore, Harwood has not shown error in the trial court's ruling in this regard.

**B. Alleged Seizure of Harwood**

Harwood next contends that his abandonment of the fanny pack was a product of an illegal police detention of Harwood. He contends that Detective Hildebrandt's command that Harwood not reach under the bed constituted a "detention" that violated the Fourth Amendment because it was effectuated without a reasonable suspicion that Harwood was or had been engaged in criminal activity.

■ A seizure occurs, for Fourth Amendment purposes, "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *California v. Hodari D.,* 499 U.S. 621, 625, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690, 697 (1991). Thus, an officer's verbal request or command can amount to a seizure of a person if the command would cause a reasonable person to believe he was not free to leave and the person accedes to the command. *Id.; State v. Agundis,* 127 Idaho 587, 590–93, 903 P.2d 752, 755–56 (Ct.App.1995). The Fourth Amendment generally precludes the detention of an individual by an officer unless the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Rawlings,* 121 Idaho 930, 932, 829 P.2d 520, 522 (1992).

■ Harwood maintains that Detective Hildebrandt's directive, limiting where Harwood could place his hands, was sufficiently restrictive upon Harwood's freedom of movement as to constitute a detention for constitutional purposes. We do not reach the merit of this assertion because the evidence does not show the required causal nexus between the alleged illegal seizure and Harwood's denial of ownership of the fanny pack. The evidence presented at the preliminary hearing, even considered in the light most favorable to Harwood, indicates that Harwood said, "That's not mine," either before or simultaneously with Hildebrandt's directive to not reach under the bed. Additionally, before searching the pack, the officers asked Harwood several more times whether the pack belonged to him. Harwood continually stated that it did not. Based upon these facts, we are constrained to hold that, even if Harwood established that the police illegally "seized" him, there is no evidence on which it could reasonably be found that this "seizure" was the cause of his abandonment of the fanny pack.[1]

**C. Privacy Interest of a Bailee**

■ Harwood's final argument is that he had a privacy interest in the contents of the

---

1. In a related argument, Harwood also asserts that despite his disclaimer of ownership, he had a reasonable expectation of privacy in the fanny pack because it contained his video rental card. Harwood has not pointed out to this Court any authority to support the proposition that one who voluntarily abandons a container nonetheless has standing to challenge a search if the container turns out to contain property belonging to him.

fanny pack because he was bailee for the true owner of the pack. However, the record is simply devoid of any evidence to support this assertion. There is no evidence that Harwood was acting as a bailee or, if he was, that the officers were on notice of that status. Detective Hildebrandt testified that Harwood told the officers that the pack belonged to a woman whom he had met at a bar. He had no way of getting in touch with her and did not know when or if she might retrieve the pack. Nothing suggests that the ostensible owner of the pack had entrusted Harwood with its safekeeping. Therefore, we decline to address further Harwood's assertions on appeal that he "was possibly" a bailee who "might have had common authority over the fanny pack."

## CONCLUSION

Because the evidence presented on Harwood's suppression motion supports none of his theories on appeal, we affirm the district court's order denying the motion.

Judge SCHWARTZMAN, concurring.

I write separately only to express a few observations on human behavior and its interrelationship with constitutional protections.

Harwood's disclaimer of "ownership" and "knowledge" of the fanny pack's contents, under the circumstances (the detective was familiar with Harwood as "being a person in the drug community"), would send out a "red flag" to any self-respecting, reasonably suspicious/skeptical police officer that (1) the fanny pack probably belonged to Harwood and (2) that it probably contained contraband, i.e. drugs. Why Harwood would ever "consent" to this whole train of events, leading to his own incrimination (hoist on his own petard, so to speak), defies my view of common sense. Nevertheless, it must be so.

But let us keep the constitutional question in perspective. There is no such thing as a right against consensual self-incrimination. There is only a right against *compelled* self-incrimination. This distinction was elegantly expressed by Judge Moylan of the Maryland Court of Special Appeals in *Cummings v. State,* 27 Md.App. 361, 341 A.2d 294, 297 (1975), *quoting State v. McKnight,* 52 N.J. 35, 243 A.2d 240, 250 (1968):

There is no right to escape detection. There is no right to commit a perfect crime or to an equal opportunity to that end. The Constitution is not at all offended when a *guilty man stubs his toe.* On the contrary, it is decent to hope that he will. Nor is it dirty business to use evidence a defendant himself may furnish in the detectional stage.... [A]s to the culprit who reveals his guilt unwittingly with no intent to shed his inner burden, it is no more unfair to use the evidence he thereby reveals than it is to turn against him clues at the scene of the crime which a brighter, better informed, or more gifted criminal would not have left.... It is consonant with good morals, and the Constitution, to *exploit a criminal's ignorance or stupidity* in the detectional process.

(Emphasis mine.) So let it be in this case!