# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 37097

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2010 Unpublished Opinion No. 735 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 8, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| CAIN D. PEERY, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Carl B. Kerrick, District Judge.

Judgment of conviction for possession of a controlled substance, methamphetamine, affirmed.

Molly J. Huskey, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Elizabeth A. Koeckeritz, Deputy Attorney General, Boise, for respondent.

_____

WALTERS, Judge Pro Tem

Cain D. Peery pled guilty to felony possession of a controlled substance, methamphetamine. I.C. § 37-2732(c)(1). On appeal, he asserts that the district court erred by denying Peery's motion to suppress evidence. We affirm.

## I.

## BACKGROUND

The following facts are taken from the district court's order on Peery's motion to suppress. Corporal Mundell of the Lewiston Police Department and three other officers were attempting to locate an individual who was the subject of several felony arrest warrants. When the officers arrived at a residence where they believed the subject would be found, they observed three or four individuals standing at the rear door of the residence. Officer Mundell recognized one of the men, Peery, from previous encounters and, because the officer felt he had a fairly

1

good rapport with Peery, approached Peery to see if he had any information about the subject the officers were seeking. As Officer Mundell approached Peery, Peery took an item out of his truck and began to leave in "a hurried fashion." Officer Mundell said something to the effect of "Stop, I want to talk to you" or "Get back here and talk to me." Officer Mundell noted that Peery held a screwdriver, which could potentially be a weapon, in his hand and appeared to manipulate something in his pant's pocket with his other hand. Officer Mundell asked Peery to drop the screwdriver, but Peery did not comply. Officer Mundell reached for the screwdriver and ordered Peery to remove his hand from his pocket. Peery did not comply but "started stiffening," pulled away, dropped the screwdriver and fled on foot while Officer Mundell was ordering him to "Stop." A foot chase ensued with Office Mundell and two other officers chasing Peery. Officer Mundell again ordered Peery to stop and remove his hand from his pocket. Peery stopped, took his hand out of his pocket and left a clear baggie exposed, which he admitted contained marijuana. Officer Mundell pulled the baggie out of the pocket. Peery was taken to the ground, handcuffed, arrested and advised of his rights. The officers then retraced the path of the chase and found a small baggie containing methamphetamine. At the police station, Peery admitted to throwing a bag of methamphetamine during the foot chase.

Peery was charged with possession of a controlled substance, methamphetamine. He filed a motion to suppress, asserting that the evidence and statements obtained from him were illegally acquired as the result of an illegal detention in violation of his constitutional rights and that the evidence against him was suppressible as fruit of the poisonous tree.[1] The district court denied the motion to suppress, holding that although the initial stop was an improper seizure, the seizure ended when Peery fled and that the methamphetamine discarded while Peery was fleeing was found by the police subsequent to Peery's arrest and was not part of an unlawful seizure. Peery entered into a conditional guilty plea which preserved his right to appeal the denial of his motion to suppress. This appeal followed.

---

[1] In his motion to suppress, Peery did not make clear whether he was focusing on his admission to the officers that the baggie in open view in his pocket contained marijuana, which resulted in his arrest, or whether he was focusing on his post-arrest admission (after having been advised of his rights upon the arrest) to the police at the police station that he had thrown away the baggie containing methamphetamine during the police chase. The district court did not make a separate determination with regard to the supressibility of any statements given by Peery and no issue is raised in that regard on this appeal.

## II.

## DISCUSSION

The standard of review of a suppression motion is bifurcated. The appellate court accepts the trial court's findings of fact that are supported by substantial evidence, but freely reviews the application of constitutional principles to the facts as found. *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005).

The facts recited by the district court in its decision denying Peery's motion to suppress are not disputed by the parties and are fully supported by the record submitted at the evidentiary hearing before the district court.

The right to be free from unreasonable searches and seizures is protected by the Fourth Amendment of the United States Constitution and article 1, section 17 of the Idaho Constitution. The constitutional protections against unreasonable seizures include seizures of the person. *Henry v. United States*, 361 U.S. 98, 100 (1959). Furthermore, it is well established that if evidence is directly or indirectly obtained through the government's exploitation of unconstitutional methods, that evidence must be excluded as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

We begin with Officer Mundell's initial contact with Peery. Not every encounter between a law enforcement officer and a citizen triggers Fourth Amendment scrutiny. *State v. Reese*, 132 Idaho 652, 653, 978 P.2d 212, 213 (1999). An encounter becomes a seizure, for Fourth Amendment purposes, when an officer, by means of physical force or by show of authority, has in some way restrained the liberty of a citizen. *California v. Hodari D.*, 499 U.S. 621, 625 (1991); *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980). Whenever an officer detains a person, however briefly, a seizure has taken place. *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968); *State v. Wixom*, 130 Idaho 752, 754, 947 P.2d 1000, 1002 (1997). The test for deciding whether someone has been seized by a show of authority is an objective one. *Mendenhall*, 446 U.S. at 554. A person is deemed "seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554; *see also Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (acknowledging that the Supreme Court has embraced the test set forth by Justice Stewart). Thus, an officer's verbal request or command can amount to a seizure of a person if, in view of all of the circumstances surrounding the

3

incident, the command would cause a reasonable person to believe that he was not free to leave and the person accedes to the command. *Mendenhall*, 446 U.S. at 554. *See also State v. Harwood*, 133 Idaho 50, 53, 981 P.2d 1160, 1163 (Ct. App. 1999); *State v. Agundis*, 127 Idaho 587, 590-93, 903 P.2d 752, 755-58 (Ct. App. 1995).

Here, the evidence showed that when Officer Mundell approached Peery, Peery started to walk away and it is reasonable to conclude that he felt free to do so, until the officer asked Peery to stop. When Officer Mundell told him to stop, Peery acceded to the officer's command and he stopped. At that point, the presence of the police officers, in conjunction with their individual focus on him, constituted a show of authority and, thus, a reasonable person would not have felt free to leave. Peery submitted to this show of authority by stopping and allowing Officer Mundell to approach. It is clear that at this point he had been seized by Officer Mundell within the context of constitutional law.

The Fourth Amendment generally precludes the detention of an individual by an officer unless the officer has a reasonable, articulable suspicion that the person to be seized had committed or was about to commit a crime. *Florida v. Royer*, 460 U.S. 491, 498 (1983); *United States v. Brignoni-Ponce*, 422 U.S. 873, 881-82 (1975); *Terry*, 392 U.S. at 22; *State v. Fry*, 122 Idaho 100, 103, 831 P.2d 942, 945 (Ct. App. 1991). Whether an officer had reasonable suspicion to detain a citizen is determined on the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Johns*, 112 Idaho 873, 877, 736 P.2d 1327, 1331 (1987). "In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference." *Brown v. Texas*, 443 U.S. 47, 52 (1979).

The district court determined from the totality of the circumstances that there was no evidence that Peery was, or apparently had been, engaging in any criminal activity when Officer Mundell approached him to ask about the person the police were seeking. Accordingly, the district court held that the initial seizure of Peery was unjustified, and we agree with that decision.

The district court next considered whether, under *Terry*, Officer Mundell's momentary physical contact with Peery in reaching for the screwdriver was reasonable. Once the police stop an individual, physical contact with that individual is not warranted unless the officer has reasonable grounds to believe that the individual is "armed and dangerous, and it [is] necessary

4

for the protection of himself and others to take swift measures to discover the true facts and neutralize the threat of harm if it materialize[s]." *Terry*, 392 U.S. at 30. The district court concluded that it was unreasonable for Officer Mundell to order Peery to drop the screwdriver and attempt to grab the screwdriver from Peery's hand because there were no articulable facts that he or others were in danger. The district court found that the facts suggested that Peery had the tool in his hand because he was working on a vehicle when the police approached, and he appeared to be manipulating something in one of his pockets with his other hand. Under the circumstances presented, the district court held it was reasonable to conclude that the screwdriver was being used as a tool on the car, not as a weapon dangerous to the police. The district court determined that Officer Mundell's order to drop the screwdriver and his grabbing of the screwdriver was an unlawful seizure. Thus, concluded the district court, Peery was unlawfully seized from the point he was ordered to stop and the officer engaged in contact with regard to the screwdriver.

We agree with the district court's conclusions. The district court correctly held that Peery's initial detention by Officer Mundell was unreasonable under Fourth Amendment protections.

We turn next to the district court's conclusion that the methamphetamine dropped by Peery during the chase culminating in his physical capture by Officer Mundell was properly seized and was not suppressible. The district court relied upon *Hodari D.*, 499 U.S. 621, and *State v. Zuniga*, 143 Idaho 431, 146 P.3d 697 (Ct. App. 2006), to support its conclusion. Based upon those cases, the district court concluded that the initial seizure of Peery without reasonable suspicion ended when Peery elected to terminate his unlawful seizure and fled from the police. *Hodari D.* makes clear that a seizure can occur either by submission to an officer's show of authority, or by the officer's application of physical force. *Hodari D.*, 499 U.S. at 626-28. Here, after first acceding to Officer Mundell's command, Peery then withdrew from submission to the officer's order to remain where he was at by fleeing. Accordingly, the detention ceased when Peery fled.

In *Zuniga* this Court explained that the facts of *Hodari D.* illustrate how the concept of a seizure should be applied. *Zuniga*, 143 Idaho at 436, 146 P.3d at 702. In *Hodari D.*, when two police officers approached a group of young men gathered around a car, the group immediately dispersed, prompting one officer to pursue the individual later identified as Hodari. By taking a

5

side street, the officer was able to overtake Hodari. Surprised, Hodari tossed away what appeared to be a small rock, moments before the officer tackled him. The central question before the United States Supreme Court was whether the small rock, which turned out to be crack cocaine, should be suppressed. The Court held that even assuming that the officers did not have reasonable suspicion to stop Hodari when the pursuit began, the cocaine should not have been suppressed, for Hodari never complied with the police officer's original show of authority and therefore was not seized when he threw the substance aside. The Court said:

> In sum, assuming that [Officer] Pertoso's pursuit in the present case constituted a "show of authority" enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled. The cocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude the evidence of it was properly denied.

*Hodari D.*, 499 U.S. at 629.

Here, like the defendant in *Zuniga*, Peery first complied with the officer's command to stop until the officer could approach and talk to him. Had Peery been searched at that time and the methamphetamine found, it would have been suppressible as fruit of the poisonous tree due to the unlawful detention without reasonable suspicion. But Peery decided to forgo the opportunity to challenge his seizure at that stage. Instead, he chose to terminate the seizure through escape from Officer Mundell's authority. Just as in *Zuniga* and *Hodari D.*, it would not be realistic for us to hold that Peery was still under seizure by Officer Mundell while he was running away and no longer submitting or yielding to Officer Mundell's authority. *Hodari D.* recognized that, with regard to a show of authority as with the application of physical force, a seizure does not occur where the subject refuses to yield to that authority. *Hodari D.,* 499 U.S. at 626. Analogizing to an arrest, the Supreme Court said:

> To say that an arrest is effected by the slightest application of physical force despite the arrestee's escape, is not to say that for Fourth Amendment purposes there is a *continuing* arrest during the period of fugitivity. If, for example, [Officer] Pertoso had laid his hands upon Hodari to arrest him, but Hodari had broken away and had *then* cast away the cocaine, it would hardly be realistic to say that disclosure had been made during the course of an arrest. Cf. *Thompson v. Whitman*, 18 Wall. 457, 471, 21 L.Ed. 897, 902 (1874) ("A seizure is a single act, and not a continuous fact").

*Hodari D.,* 499 U.S. at 625 (emphasis in original); *Zuniga*, 143 Idaho at 436-37, 146 P.3d at 702-03.

6

The same circumstance as described by the Supreme Court above happened in the instant case. After Officer Mundell made contact with Peery to remove the screwdriver, Peery broke away and ran, casting the methamphetamine as he fled. It would hardly be realistic to say that the disclosure of that evidence had been made during the course of an arrest or detention.

Peery suggests on appeal that he did not "abandon" the controlled substance while he was fleeing from the officers because an abandonment caused by illegal police conduct is not a voluntary abandonment, citing cases where the police have illegally seized luggage and the owner disclaims ownership of the contents in order to avoid prosecution for possession of illegal items. It does not appear from the record that such an argument was made in the district court below and, even if made, would not have survived the application of *Hodari D.* by the district court. To reiterate, the Supreme Court succinctly stated that "The cocaine abandoned while [Hodari] was running was in this case not the fruit of a seizure, and his motion to exclude the evidence was properly denied." *Hodari D.*, 499 U.S. at 629. The use of the exclusionary rule to inhibit production of evidence gathered in police chases was further addressed when the Supreme Court said:

> Street pursuits always place the public at some risk, and compliance with police orders to stop should therefore be encouraged. Only a few of those orders, we must presume, will be without adequate basis, and since the addressee has no ready means of identifying the deficient ones it almost invariably is the responsible course to comply. Unlawful orders will not be deterred, moreover, by sanctioning through the exclusionary rule those of them that are *not* obeyed. Since policemen do not command "Stop!" expecting to be ignored, or give chase hoping to be outrun, it fully suffices to apply the deterrent to their genuine, successful seizures.

*Hodari D.*, 499 U.S. at 627 (emphasis in original); *see also Zuniga*, 143 Idaho at 437, 146 P.3d at 703.

## IV.

## CONCLUSION

Accordingly, we hold that when Peery disobeyed Officer Mundell's order to stop and fled from the scene, he was no longer the subject of an unlawful detention. The chase by Officer Mundell did not constitute a new seizure under *Hodari D.* until Peery finally acceded to Officer Mundell's command to stop during the chase. The methamphetamine discarded by Peery during the chase was not the fruit of a poisonous tree nor was it abandoned because of police

misconduct. The district court correctly concluded that the evidence should not be suppressed. The order denying Peery's motion to suppress is upheld and we affirm Peery's judgment of conviction.

Judge GRATTON and Judge MELANSON **CONCUR.**