# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 49681

STATE OF IDAHO,

        Plaintiff-Respondent,

v.

JORDAN TAYLOR REYES,

        Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Filed:  October 4, 2023

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Samuel Hoagland, District Judge.

Order denying motion to suppress, <u>affirmed</u>; judgment of conviction and unified sentence of five years, with a minimum period of incarceration of two years, <u>affirmed</u>.

Erik R. Lehtinen, Interim State Appellate Public Defender; Jacob L. Westerfield, Deputy Appellate Public Defender, Boise, for appellant.  Jacob L. Westerfield argued.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.  Kenneth K. Jorgensen argued.

---

HUSKEY, Judge

Jordan Taylor Reyes appeals his conviction for felony possession of a controlled substance (fentanyl), Idaho Code § 37-2732(c).  Reyes argues the district court erred in denying his motion to suppress evidence obtained during an unlawful seizure, thus violating his constitutional rights provided by the Fourth Amendment to the United States Constitution and Article I § 17 of the Idaho Constitution.  A defendant is not unlawfully seized during a consensual encounter with a police officer.  Furthermore, law enforcement may conduct a brief investigatory stop when it has reasonable, articulable suspicion based on facts and rational inferences from those facts that the detainee is, has been, or is about to be, engaged in criminal activity.  The district court did not err when it denied Reyes' motion to suppress because the officer had reasonable, articulable suspicion

that Reyes had been, was, or was about to be, engaged in criminal activity and, thus, the subsequent investigatory detention was constitutionally permissible. The order denying Reyes' motion to suppress and his judgment of conviction are affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 2021, at approximately 5:35 a.m., a citizen reported to law enforcement that he observed two individuals who appeared to be tampering with or attempting to burglarize vehicles in the parking lot of an apartment complex in which the citizen resided. The citizen reported that the two individuals were males, each had a bicycle, one individual was wearing all black clothing, and the other was wearing orange clothing and had a backpack. Officer Moss, who was patrolling about two to three minutes from the area, was dispatched to the area to respond to a "vehicle prowler" report. Officer Moss testified that a "vehicle prowler" report meant a vehicle burglary in progress or an attempt to burglarize a vehicle.

Officer Moss drove by the apartment parking lot but did not see anyone there. He began an area check of the surrounding streets and observed one individual about two blocks away from the apartment parking lot. It was dark outside, and Officer Moss did not see anyone other than this individual in the area. The individual, later identified as Reyes, was crouched next to a bike in front of the Boise Bicycle Project. Reyes matched the description of one of the suspects as he was wearing all black clothing and had a backpack and a bike.

Without activating his overhead lights or spotlight, Officer Moss made a U-turn and parked his patrol vehicle about 30-40 feet away from Reyes. Officer Moss got out of his patrol vehicle and approached Reyes on foot. Officer Moss greeted Reyes, explained that he was investigating a report of "folks picking around cars and stuff," and asked if that "sounded familiar." Reyes was visibly soaked in sweat, jittery, and wiped his face with his shirt. In Officer Moss's training and experience, Reyes appeared to be under the influence of narcotics. Reyes responded, "uh, no." Officer Moss asked how long Reyes had been in the area. Reyes answered evasively that he had been pumping his bike tires because the pump on the Greenbelt wasn't working, and he pointed that he went from "Capitol[1], there, to here." He explained he had two flat tires and was heading to Vista Avenue.

---

[1]    From the context, Reyes was referring to Capitol Boulevard.

2

Officer Moss asked Reyes for identification or a name. Reyes responded that his name was "Ryan Gilliam" and September 1, 1993, was his birthdate. Officer Moss wished Reyes good luck with fixing his bicycle and walked back to his patrol vehicle. Upon returning to the patrol vehicle, Officer Moss quickly searched an Idaho database for the name and date of birth Reyes gave him, and no results returned. Officer Moss got out of his patrol vehicle and told another officer who just arrived at the scene that he did not think Reyes provided his correct name.

Officer Moss again approached Reyes, who had started to walk away down the sidewalk, and Officer Moss asked Reyes how long he had been in Boise. Reyes responded that he did not live in Boise and he was from Yakima, Washington. He stated he was visiting a friend named "Jordan," but he did not know Jordan's address. Officer Moss asked for any sort of identification, "anything with a name on it," and Reyes said he did not have anything. At this point, other officers arrived, and Officer Moss conducted a pat-down search for weapons after observing a knife clip on Reyes' pocket. Reyes was questioned further about his identification, and he refused to give his social security number or any other information that would help officers identify him.

Officer Moss asked Reyes to sit down while law enforcement attempted to verify his identity and explained that he was being detained. Officer Moss indicated they were investigating a vehicle prowler report. Officers continued to search other databases and located information and a photograph of a Ryan Gilliam from Washington; the photo did not match Reyes' appearance. The officers contacted the reporting citizen, who provided further details over the phone about the individuals he saw tampering with cars in the parking lot. The citizen later participated in a field identification and confirmed that Reyes was one of the individuals he observed tampering with or attempting to break into cars in the parking lot.

Reyes was arrested and cited for false personation, I.C. § 18-3001, and resisting and obstructing officers, I.C. § 18-705. Officer Moss later testified the citation for false personation was a mistake and that he meant to cite Reyes for providing false information to a law enforcement officer under I.C. § 18-5413. Reyes was searched incident to the arrest and fentanyl pills and drug paraphernalia were located on his person. Officers also located Reyes' identification. After being read his *Miranda*[2] rights, Reyes confirmed his identity, admitted he was one of the individuals observed by the citizen, indicated he was trying to steal property from the parking lot, and admitted

---

[2]     *Miranda v. Arizona*, 384 U.S. 436 (1966).

the pills belonged to him. Reyes was arrested and subsequently charged with possession of a controlled substance, possession of drug paraphernalia, and providing false information to law enforcement. Reyes filed a motion to suppress the evidence.

The district court denied the motion to suppress, finding that Reyes' initial encounter with Officer Moss was consensual and the second encounter, which was a detention, was based on reasonable, articulable suspicion of criminal activity, either the vehicle prowling or providing incorrect personal identifying information. Reyes subsequently entered a conditional guilty plea to possession of a controlled substance (fentanyl) and providing false information to a police officer; the paraphernalia charge was dismissed. Reyes appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

At issue in this case is whether the officer had a reasonable, articulable suspicion to detain Reyes to investigate criminal activity. On appeal, the parties do not challenge the district court's finding that Reyes' initial engagement with the first officer was consensual or that Reyes was seized when Officer Moss called out to Reyes as he was walking away down the sidewalk. Consequently, we will assume for purposes of the appeal that Reyes was detained when Officer Moss re-established contact after running the information Reyes provided through dispatch. Thus, the only issue on appeal is whether the district court correctly concluded Officer Moss had reasonable suspicion that Reyes was, had been, or was about to, engage in criminal activity at the time he was detained.

Reyes argues there was not reasonable suspicion to detain him on the vehicle prowling report because the description of the individual provided by the citizen was too vague to provide a sufficient basis for the detention. Reyes further argues there was insufficient evidentiary support to detain him for reasonable suspicion of providing a false name because Officer Moss only checked the Idaho database for information. Reyes argues that had the officer checked a more inclusive database, the officer would have learned that the name and date of birth were a correct name and birthdate for Ryan Gilliam, although not the correct name or birthdate for Reyes. In response, the State argues the brief investigatory detention did not violate Reyes' constitutional rights because the officers were aware of specific, articulable facts sufficient to establish a reasonable suspicion that Reyes had been, was, or was about to be, engaged in criminal activity.

The Fourth Amendment to the United States Constitution and Article I, § 17 of the Idaho State Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and applies to the states through the Due Process Clause of the Fourteenth Amendment. U.S. CONST. amend. IV; *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009).[3] The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). A limited investigative detention is permissible if it is based upon an officer's reasonable articulable suspicion that the detained person is, has been, or was about to be engaged in criminal activity. *Bishop*, 146 Idaho at 811, 203 P.3d at 1210. An officer's "[r]easonable suspicion must be based on specific, articulable facts and the rational inferences that can be drawn from those facts." *Id.*; *see also State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). The quantity and quality of necessary information to establish reasonable suspicion is greater than a mere hunch or "inchoate

---

[3] Although Reyes contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Reyes' claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

and unparticularized suspicion" but less than what is necessary to establish probable cause. *Alabama v. White*, 496 U.S. 325, 330 (1990) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)); *Bishop*, 146 Idaho at 811, 203 P.3d at 1210. Whether the officer possessed enough necessary information to establish reasonable suspicion is evaluated on the totality of the circumstances at or before the time of the stop. *Bishop*, 146 Idaho at 811, 203 P.3d at 1210.

A report received from an individual regarding suspected criminal activity may establish reasonable suspicion when it would warrant a person of reasonable caution in the belief that a stop was appropriate. *Id.* A report received from a known citizen is generally sufficient to establish reasonable suspicion because the citizen's reputation can be assessed and may be subjected to criminal liability if the provided information is untruthful. *Id.* at 812, 203 P.3d at 1211. Even though reports provided by known citizens are presumed reliable, the report's content and the citizen's basis of knowledge are examined under the totality of the circumstances to determine whether the report gives rise to reasonable suspicion. *Id.*

In determining whether Officer Moss had reasonable suspicion of criminal activity to briefly detain Reyes to investigate suspected criminal activity, we look to the totality of the circumstances. By the time Reyes was detained, Officer Moss had the information provided by the citizen to include: (1) the citizen's identity; (2) the basis of the citizen's knowledge, which was a first-hand observation of Reyes and another individual tampering with or attempting to burglarize cars in the parking lot of the apartment building where the citizen lived; and (3) that it appeared to be two males, one wearing all black clothing and one wearing black and orange clothing. Officer Moss had additional information which, as found by the district court, was the following: (1) the events occurred during the early morning hours when it was still dark; (2) the officer responded within two to three minutes and found Reyes about two blocks from the apartment parking lot; (3) Reyes was the only person in the vicinity and was wearing all black clothing; and (4) Reyes had a bicycle as reported by the citizen.

During the initial consensual encounter between Reyes and Officer Moss, Reyes: (1) provided a name and birthdate that were not his; (2) never indicated he was from out of town and displayed familiarity and knowledge of local places like the Greenbelt, Vista Avenue, and Capitol Boulevard; (3) never produced any identification; and (4) was sweating profusely and was jittery, which was abnormal for the time of day. The district court concluded given the totality of

the circumstances, the officer had reasonable, articulable suspicion of criminal activity at the time Reyes was detained.

Officer Moss had reasonable suspicion of criminal activity to briefly detain Reyes to investigate suspected criminal activity. In addition to all the above information, Reyes confirmed he was from out of state but never provided any identification or any personal identifying information such as an address or social security number. While Officer Moss located records, including a photograph, corresponding to the name and birthdate provided by Reyes, the appearance of that individual did not match Reyes' appearance. Additionally, the reporting citizen was contacted and provided additional information. The district court also concluded that based on the false information provided by Reyes, the officer had probable cause to arrest Reyes for providing false information. The district court ultimately concluded there was no basis on which to suppress the evidence and denied the motion.

Reyes does not challenge the district court's factual findings or the content or reliability of the citizen report, but argues that in light of the holding in *State v. Zapata-Reyes*, 144 Idaho 703, 169 P.3d 291 (Ct. App. 2007), the citizen report in this case was too vague to provide reasonable suspicion of criminal activity. The State argues this case is distinguishable from *Zapata-Reyes* and the district court correctly concluded this case is "closer" to *State v. Zuniga*, 143 Idaho 431, 146 P.3d 697 (Ct. App. 2006) to support the court's conclusion the officer possessed reasonable suspicion of criminal activity to justify the brief, investigatory detention.

We need not decide which case is more similar to this case because the presumed reliability of the information provided by the citizen, in addition to the information obtained during the consensual encounter, provided Officer Moss with sufficiently specific information to justify the brief, investigatory detention of Reyes. Although Reyes argues the officer did not have specific, articulable facts to suspect Reyes of vehicle prowling, the officer need not have a reasonable suspicion of a specific crime; instead, there need only be objective and specific facts giving rise to a reasonable belief the individual had been, is, or is about to be, engaged in some criminal activity. *State v. Perez-Jungo*, 156 Idaho 609, 615, 329 P.3d 391, 397 (Ct. App. 2014). As listed above, the officer had specific, articulable facts suspecting Reyes of criminal activity.

Reyes argues that the general description of Reyes was too vague to provide reasonable suspicion that he was the individual in the apartment parking lot, in part because the citizen reported it was the individual in orange and black with the backpack. However, when viewed in

7

light of the totality of the circumstances, Reyes' appearance was only one factor considered by the officer. For example, the officer responded within two to three minutes of the dispatch notification and Reyes was the only person the officer encountered near the address to which he was dispatched; matched the physical description of the suspicious person, was dressed all in black, and had a bicycle; was evasive in his answers; displayed personal characteristics (sweating profusely and jittery) that were odd for the time and circumstances; had no physical identification; and appeared to be familiar with local roads and locations. The information provided by the citizen was almost immediately confirmed by Officer Moss, who was only two to three minutes away. While the citizen reported that the person in orange and black had a backpack and Reyes was not wearing orange but had a backpack, as noted by the district court, a backpack is easily transferrable. More importantly, that sole fact is insufficient to negate all the other corroborated information and the information obtained prior to Reyes' detention. Thus, the officer had reasonable suspicion to briefly detain Reyes to investigate criminal activity.

On appeal, Reyes conceded at oral argument that a finding of reasonable suspicion for the vehicle prowling would be dispositive of the issues in this case because that justification continued after Reyes' detention. Because we conclude the district court did not err in finding the officer had reasonable, articulable suspicion to briefly detain Reyes to investigate the vehicle prowling report, we need not address whether the officer also had reasonable, articulable suspicion to detain Reyes for the crime of false personation. The district court did not err in denying Reyes' motion to suppress.

## IV.
## CONCLUSION

The officer possessed specific, articulable facts providing reasonable suspicion of criminal activity to justify Reyes' detention to confirm or dispel that suspicion. Reyes' detention and his subsequent arrest and search of his person did not violate the Fourth Amendment to the United States Constitution; thus, the district court did not err in denying Reyes' motion to suppress. The order denying Reyes' motion to suppress and judgment of conviction are affirmed.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.

8